## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MSR TECHNOLOGY GROUP, LLC,

          Plaintiff,

    v.

VISTALTECH, INC.; MASTAN REDDY
PAIDELA; VAGDEVI SATKURI; MOULI
PRASAD DONIPATHI; and KAPILESWAR
REDDY JUTUR, and DOES 1-99

          Defendants.

Case No. 1:24-CV-03203

## PLAINTIFF MSR TECHNOLOGY GROUP, LLC'S
## MOTION FOR AN ORDER TO SHOW CAUSE AS TO WHY DEFENDANTS
## SHOULD NOT BE SANCTIONED FOR SPOLIATION OF EVIDENCE

Plaintiff MSR Technology Group, LLC ("MSR"), through undersigned counsel, respectfully submits this Motion for an Order to Show Cause (the "Motion") against Defendants[1] concerning their spoliation of evidence and express violations of this Court's orders.

### PRELIMINARY STATEMENT

The soon-to-be ex-wife of Donipathi—Prathyusha Melapindi—has come forward with a declaration based on her firsthand observation of events from inside Defendants' conspiracy. Not only has she confirmed what the documentary evidence overwhelmingly shows (that Paidela was actively involved with, aware of, and behind Defendants' scheme to steal MSR's business from the inside) but also that Defendants have actively destroyed evidence and violated this Court's

---

[1] "Defendants" include VistalTech, Inc. ("VistalTech"), Mastan Reddy Paidela ("Paidela"), Mouli Prasad Donipathi ("Donipathi"), and Kapileswar Reddy Jutur ("Jutur"), and Vagdevi Satkuri ("Satkuri") (Paidela, Donipathi, Jutur, and Satkuri, the "Individual Defendants") (collectively with VistalTech, the "Defendants"). While this Motion refers to "Defendants," MSR does not seek relief against Satkuri.

1

orders—all in a calculated effort to conceal their misconduct. Defendants' spoliation of evidence must be severely punished. MSR respectfully requests the Court to issue sanctions commensurate with the truly outrageous misconduct revealed by Ms. Melapindi.

## BACKGROUND[2]

**I.      DEFENDANTS' DELIBERATE DESTRUCTION OF EVIDENCE, WILLFUL SPOLIATION OF RELEVANT COMMUNICATIONS AND DOCUMENTS, AND CONTINUING VIOLATION OF THIS COURT'S ORDERS**

Ms. Melapindi has recently signed a declaration, under penalty of perjury, concerning Defendants' spoliation of evidence related to their scheme to defraud and steal MSR's business to VistalTech. *See* Ex. 1 (Declaration of Prathyusha Melapindi ["Melapindi Decl."]). Moreover, Ms. Melapindi confirmed that Defendants, contrary to their sworn testimony, have been in constant communication with one another through the use of "burner phones" that they utilized solely to conceal their communications from discovery. Ms. Melapindi witnessed everything about which she testifies because she was involved with VistalTech since its inception—indeed, she picked the name—and was involved in its operations.

**A.      The Original Concept of VistalTech and Its Pivot to Illegally Compete with MSR to Steal MSR's Business.**

In August 2020, Ms. Melapindi purchased the domain for VistalTech's website. Melapindi Decl., ¶ 9. Ms. Melapindi's original idea was for Donipathi and her to run a legitimate staffing business that would also include other business ventures such as real estate, a trust, and a non-governmental organization under the "Vistal Group" name. *Id.* Ms. Melapindi and Donipathi planned to start VistalTech *after* Donipathi resigned from MSR because the two understood it was

---

[2] Given the numerous briefs submitted in this litigation, including the Parties' briefing regarding the preliminary injunction (Docket Nos. 261, 298), the Court is familiar with the factual background. This Motion only lays out the background concerning Defendants' spoliation of evidence.

illegal to start a competing company while he was still an MSR employee. *Id.* at ¶ 10. However, after Paidela sold the Acquired Companies to MSR in November 2020, and Jutur became involved, the plan changed. *Id.* at ¶ 11.

Paidela's sudden sale of the Acquired Companies to MSR surprised Donipathi and Jutur, who were the primary recruiters at Synapsis. Melapindi Decl., ¶ 11. Donipathi and Jutur only learned of the sale via an MSR general announcement in January 2021. *Id.* They were disappointed in Paidela for selling the businesses without telling them or giving them any share of the sales proceeds from the Acquired Companies that they helped build. *Id.* They confronted Paidela and expressed their anger and frustration. *Id.* at ¶ 12. In response, Paidela directed Donipathi and Jutur to start their own information technology ("IT") staffing company. *Id.* Paidela promised to support them in their new venture by serving as an advisor and by helping them obtain vendor and customer contacts. *Id.* To appease them, Paidela explicitly permitted Donipathi and Jutur to keep working at MSR (and continue to receive an MSR salary, which he simultaneously increased) while, ***at the same time***, they operated VistalTech. *Id.* at ¶¶ 12, 13. Paidela planned to join VistalTech after his non-compete with MSR. *Id.* at ¶ 13. They proceeded with this scheme, notwithstanding Ms. Melapindi's opposition and expression of concern that this was blatantly illegal. *Id.* at ¶¶ 14–19.[3]

### B. Defendants' Destruction of Evidence *after* MSR's Lawsuit.

On April 22, 2024, after being terminated by MSR and served with its court filings, Donipathi and Paidela spoke on the phone, and Paidela said they would all "be screwed." Melapindi Decl., ¶ 28. Immediately after this Court issued the TRO and ordered expedited

---

[3] As the Court is well aware from MSR's previous filings (Docket Nos. 261, 298), Defendants went to great lengths, including the use of fake e-mail aliases, to conceal the Individual Defendants' identities from VistalTech—all of which Ms. Melapindi corroborates in detail. Melapindi Decl., ¶¶ 19–26.

discovery and forensic imaging, Defendants intentionally and cooperatively destroyed evidence related to MSR's claims, including text and WhatsApp messages, and other communications and documents from their devices and the cloud to conceal their misconduct. *Id.* at ¶¶ 30–33. Ms. Melapindi witnessed all of this. *Id.*

Defendants did not limit their destruction of evidence to the outset of the litigation. Since the filing of this lawsuit to at least October 2025 (and, on information and belief, to the present), they engaged in subterfuge to ensure none of their communications with each other could be subject to discovery. Defendants—contrary to their sworn testimony—regularly and frequently communicate with one another about this lawsuit and VistalTech using prepaid "burner" flip phones—which they destroy and replace on an approximate weekly basis to conceal their communications. Melapindi Decl., ¶¶ 34–37. It was Paidela's idea to deploy burner phones to stay in constant communication regarding this litigation. *Id.* at ¶ 34. According to Ms. Melapindi's sworn testimony, "[t]hey had a system for whenever they destroyed their previous burner phone and number and received a new burner phone: one person would get a new number and share it with the others, then they would call each other on the new numbers. They used these phones to discuss case details every day." *Id.* at ¶ 36.

Given Ms. Melapindi's involvement with VistalTech, she reviewed Donipathi's deposition transcripts in this litigation. Melapindi Decl., ¶ 38. Donipathi's testimony that he had little to no communication with Paidela following the initiation of this lawsuit is false. Ms. Melapindi knows Donipathi's testimony was false because she observed and heard Donipathi use his burner phone to call Paidela on a daily basis. *Compare* Ex. 2 at 25:23–27:19; *with* Melapindi Decl., ¶ 38 ("Donipathi use[d] burner phones to call Paidela on a near-daily basis").

//

## II.   DEFENDANTS VIOLATED THEIR DUTY TO PRESERVE ALL POTENTIALLY RELEVANT EVIDENCE

By no later than April 22, 2024, when MSR served Paidela, Donipathi, and Jutur with termination letters that expressly admonished them about their legal duty to not destroy evidence, Defendants were on notice as to their obligation to preserve all potentially relevant evidence. Docket No. 18. Simultaneously with MSR's service of Defendants' termination letters and admonishment to preserve all relevant evidence, MSR served Defendants with its Complaint, Motion for TRO, Motion for Expedited Discovery, and related documents. *Id.* Defendants immediately retained counsel and filed appearances. Docket Nos. 16, 17, 25–27.

Included within MSR's court filings was evidence of Defendants' pattern and practice of deleting e-mails in an effort to destroy evidence related to their scheme to steal MSR's business and divert it to VistalTech. Docket No. 7, at Exs. BB–GG. On April 26, 2024, the Court granted MSR's motions for a TRO and expedited discovery. Docket Nos. 28, 29. In the TRO, the Court ordered Paidela and VistalTech (which includes Donipathi, Jutur, and Satkuri as its officers) to identify all accounts, cloud-based storage, documents, media, equipment, and hard drives to MSR's counsel by May 3, 2024. Docket No. 29. The Court also ordered the Individual Defendants to return all MSR-issued devices. *Id.* In the Parties' Joint Status Report on April 30, 2024, Defendants acknowledged that,

> With respect to all electronic devices identified on or before May 3, 2024, pursuant to the Court's Order on April 26, 2024 (Docket No. 29), Defendants shall make such identified devices available for imaging on or before May 3, 2024, to a forensic vendor to be agreed upon by the Parties, which, upon imaging, shall turn the image over to MSR for forensic review pursuant to the Parties' agreed search protocol with copies of such imaging to Defendants[.]

Docket No. 31. The Court adopted the discovery and forensic analysis process and timeline. Docket No. 32. The Parties used agreed search terms to pull information from Defendants' devices.

On July 17, 2024, the Court issued a preliminary injunction that, among other things, ordered Defendants to "[p]reserve all of MSR's property in their possession and control, including preserving all accounts, cloud-based storage, documents (whether electronic or hard copy), media, equipment, and hard drives on which any information has been transferred" as well as ordered the Parties to "***preserve all evidence, whether electronic or otherwise, related in any way to this action***." Docket No. 84 (emphasis added). The Court's preliminary injunction remains in effect.

### **LEGAL STANDARD**

"Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case[.]" *Smith v. U.S.*, 293 F.3d 984, 988 (7th Cir. 2002). Federal Rules of Civil Procedure 37(e) provides the Court authority to sanction a party for the failure to preserve electronically stored evidence. *Sonrai Sys., LLC v. Romano*, 2021 WL 1418405, at *8 (N.D. Ill., 2021). Rule 37(e) states that,

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

"The prevailing rule [in the Seventh Circuit] is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction." *Crabtree v. Nat. Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001).

A spoliation sanction is proper only when a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). When considering whether to impose a sanction, "[t]he

6

crucial element is not that the evidence was destroyed but rather the reason for the destruction." *Park v. City of Chi.*, 297 F.3d 606, 615 (7th Cir. 2002) (quoting *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258 (7th Cir. 1982)). A party destroys a document in bad faith when "for the purpose of hiding adverse information." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (quoting *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001)). "If the court finds the party 'acted with the intent to deprive another party of the information's use in the litigation,' the court 'may' impose further sanctions, including default judgment." *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628 (7th Cir. 2018). A "lesser sanction would not be sufficient to cure the prejudice that [the requesting party] has suffered due to the spoliation because it is impossible to determine the full extent of the spoliation." *Pable v. Chi. Transit Auth.*, 2024 WL 3688708, at \*9 (N.D. Ill., Aug. 7, 2024). "Spoliation that sabotages a strong case supports default judgment[.]" *Boneck v. City of New Berlin*, 22 Fed. Appx. 629, 630 (7th Cir. 2001).

## ARGUMENT

### I. THE COURT SHOULD IMPOSE A DEFAULT JUDGMENT SANCTION UNDER RULE 37 FOR DEFENDANTS' SPOLIATION OF EVIDENCE IN BAD FAITH

Defendants' willful spoliation of evidence deserves the most severe sanction of default judgment and dismissal of Paidela's and VistalTech's counterclaims. MSR satisfies each of the Rule 37 elements distilled by *DR Distributors., LLC v. 21 Century Smoking, Inc.*,

> Rule 37(e) has five threshold requirements: (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time of the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery.

513 F. Supp. 3d 839, 958 (C.D. Ill. 2021); *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776–77 (7th Cir. 2016) (preponderance of the evidence is sufficient to impose sanctions under Rule 37).

7

Given the pervasive nature of Defendants' spoliation—Defendants purposefully and selectively deleted relevant evidence, did so to avoid discovery and this Court's order requiring preservation, and continued their campaign of concealing communications from discovery in this litigation for two years—MSR's requested curative measure is commensurate with their misconduct.

### A. Defendants Permanently Deleted Electronically Stored Information ("ESI").

There can be no dispute that the evidence Defendants destroyed was ESI. Melapindi Decl., ¶¶ 30–33; *Garrit v. City of Chi.*, 2018 WL 11199008, at *3 (N.D. Ill., Mar. 6, 2018) ("Because defendants are seeking text messages, emails and electronically stored photographs and call logs" on plaintiff's cell phone, "we agree with plaintiffs that the discovery sought here is ESI."), *report and recommendation adopted*, 2018 WL 11199016 (N.D. Ill., Jun. 27, 2018). Donipathi permanently deleted WhatsApp messages, text messages, e-mails, screenshots, and files related to Paidela and VistalTech from his electronic devices and his iCloud. Melapindi Decl., ¶ 31. Donipathi directed Jutur and Paidela to do the same—which they confirmed they would do. *Id.* at ¶ 32. MSR expects Defendants to argue that MSR bears the burden to first show that the ESI even existed. They would be wrong. *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 618–19 (N.D. Ill., 2022) ("this Court is not convinced that the burden to establish that ESI ever existed falls on the movant. Burdens of proof generally fall on the party with better access to the information."). Ms. Melapindi's sworn declaration satisfies MSR's burden of proof.

### B. There Can Be No Dispute That Defendants Were Obligated to Preserve All Potentially Relevant Electronically Stored Information.

For all the reasons stated in Section II, *supra*, there also can be no dispute that Defendants had an obligation to preserve all potentially relevant ESI as of April 22, 2024, when they received evidence preservation notices from MSR and the onset of this litigation. *DR Distrib.*, 513 F. Supp.

8

3d at 978 ("The uniform understanding is that the duty to preserve is triggered when litigation is commenced or reasonably anticipated.").

## C. Defendants Deleted ESI That Was Directly Relevant to This Litigation.

Defendants undertook a targeted approach to delete relevant (and logically, harmful) information from their electronic devices and cloud-storage databases. Donipathi deleted "any files related to VistalTech or Paidela" and "used search keywords to locate and delete relevant content." Melapindi Decl., ¶ 31. He instructed Paidela and Jutur to do the same, and they followed his lead. *Id.* The burden to show relevance "is not a high standard for at least two reasons." *Hollis*, 603 F. Supp. 3d 620–21. Relevance is governed by the broad scope of Rule 26(b)(1). *Id.* And where, as here, Defendants had exclusive access to the spoliated ESI, MSR does not bear the burden. *Id.* ("In the context of spoliation, the party seeking sanctions does not have access to all the necessary proof, in large part, because the other side spoliated it."). The ESI that Defendants deleted was plainly relevant to nearly every one of MSR's claims. *See* Docket No. 147 (FAC). This litigation centers around the misconduct of Paidela, Donipathi, and Jutur as the key conspirators in founding and operating VistalTech to fraudulently and deceptively compete with MSR, in violation of numerous contracts, and by tortiously interfering with MSR's contracts and business relations.

Paidela has (incredibly, given other evidence already uncovered) denied any involvement with VistalTech. Defendants have provided impossible-to-believe sworn testimony to back up Paidela. At a minimum, Defendants destroyed reams of evidence that would have ended the charade they have concocted about Paidela's supposed non-involvement with VistalTech.

## D. Defendants Intentionally and Deliberately Destroyed Relevant ESI.

Defendants' destruction of ESI was neither accidental, negligent, nor reckless. As professionals in the IT industry with master's degrees in computer science, they knew exactly what

9

they were doing. They not only failed to take reasonable steps to preserve the ESI—they did the opposite. *Pable*, 2023 WL 2333414, at *25 (finding intentional destruction of ESI when a party deleted Signal messages). Defendants' erasing of highly relevant ESI was in furtherance of their goal of ensuring that the evidence "would not be recoverable and would be permanently deleted." Melapindi Decl., ¶ 33. This is not a scenario in which inferences of intent must be drawn. Ms. Melapindi has personal and firsthand knowledge of Defendants' purposeful misconduct. She sat beside Donipathi as he rummaged through his personal devices and iCloud to delete key evidence. *Id.* at ¶¶ 6, 31. Moreover, Defendants' transition into using prepaid burner flip phones further demonstrates the lengths to which they have gone to intentionally destroy evidence—recycling their burner phones on an approximate weekly basis to leave no evidence behind of their daily conversations. *Id.* at ¶¶ 34–38; *see Gruenstein v. Browning*, 2022 WL 3213261, at *7 (N.D. Ill., 2022).

### E. The ESI Is Permanently Destroyed and Cannot Be Replaced.

The ESI that Defendants selectively erased is forever lost. Ms. Melapindi testifies that Donipathi's plan for the evidence to "not [be] recoverable and [] permanently deleted." Melapindi Decl., ¶ 33. "The question is whether the *electronically stored information* can be restored or replaced. *DR Distrib.*, 513 F. Supp. 3d at 980 (emphasis in original). MSR cannot simply depose Defendants—each of whom have demonstrated their willingness to lie under oath—to recreate the communications between them. *Id.* at 980 ("Deposing the sender and receiver of chats is not a remedy here."); *Schmalz v. Village of N. Riverside*, 2018 WL 1704109, at *4 (N.D. Ill., 2018) ("Without the lost text messages, Plaintiff is deprived of the opportunity to know the precise nature and frequency of those private communications, which occurred during a critical time period.")

(cleaned up). Defendants achieved their goal—here, "the ESI has been lost. It's gone." *DR Distrib.*, 513 F. Supp. 3d at 981.

### F. Defendants Acted in Bad Faith with An Intent to Deprive and Cause Prejudice to MSR—Which Warrants Default Judgment and Terminating Sanctions.

There is no room for doubt that Defendants perpetrated their egregious conduct solely to deprive MSR of material evidence to prejudice it in this litigation. "Intent must be established before a court can impose sanctions, such as adverse jury instructions, default, and dismissal under Rule 37(e)(2)." *DR Distrib.*, 513 F. Supp. 3d at 980. Prejudice is assumed from intent. *Id.* Regardless, MSR has demonstrated both. The timing of Defendants' spoliation is damning—the mass deletion began immediately "[a]fter the [TRO] was entered by the Court ordering Donipathi, Jutur, Paidela, and VistalTech to turn over their devices for forensic imaging and review[.]" Melapindi Decl., ¶ 30. It was in direct response to this litigation and the Court's orders; in fact, it was the "***first thing*** they did upon learning of the TRO . . . [¶] to ensure there was no recoverable evidence for MSR to obtain from their devices." *Id.* at ¶¶ 30, 33. Moreover, Defendants' utilization of burner phones served no purpose but to deprive MSR of discovery of their communications as this litigation has dragged on for two years. Melapindi Decl., ¶¶ 34–37. There can be no conclusion but that Defendants intentionally permanently deleted ESI in bad faith to deprive MSR of key evidence supportive of its claims and that was unfavorable to Defendants' defenses.

"'Prejudice' under Rule 37(e) includes the thwarting of a party's ability to obtain the evidence it needs for its case." *Hollis*, 603 F. Supp. 3d at 623. "[C]ourts evaluate prejudice in the context of determining the harm inflicted by the non-existence of relevant information[.]" *Id.* MSR has uncovered significant evidence against Defendants to support its claims. That effort has cost millions of dollars, tens of thousands of hours, and valuable resources piecing together the fragments of Defendants' scheme to defraud MSR and steal its business. Defendants forced MSR

11

to review hundreds of thousands of documents to ascertain and track Donipathi's and Jutur's usage of fake e-mail aliases in their deceptive, complex scheme to confuse MSR's customers, vendors, and employees as they diverted them away to VistalTech. Docket No. 263 (MSR's Motion to Modify Stipulated Preliminary Injunction), at 6–10; Melapindi Decl., ¶¶ 25, 26.

Likewise, MSR has substantial evidence of Paidela's direct involvement with VistalTech and the conspiracy against MSR—however, there are gaps that simply cannot be explained without documentary evidence and contemporaneous communications, such as conspicuous transfers of monies from Paidela's close friends and business partners to VistalTech with no context and which simply make no logical sense. As just one example, Ms. Melapindi testifies that she—as the individual who reviewed VistalTech's financials and assisted with administrative functions— learned from Donipathi that "Paidela did not want any direct financial transactions between himself and VistalTech, so Paidela arranged for the funds [$250,000 interest-free] to come through OneRoom instead." Melapindi Decl., ¶ 43. Defendants have produced scanned images of OneRoom's checks to VistalTech—remarkably with no associated communications describing or discussing this quarter-million-dollar interest-free loan or any of its terms for repayment. MSR's lawyers have flown across the country to take many depositions of Paidela's friends and acquaintances. This all could have been avoided if MSR had access to the evidence that Defendants destroyed. As another example of an unexplainable event, VistalTech produced a single e-mail where Donipathi sends Paidela a copy of VistalTech's 2022 profit-and-loss statement and refers to him as "anna"—which Donipathi testified is how he refers to Paidela out of respect as an elder. Ex. 2 at 354:23–355:5. Astoundingly, Donipathi testified under oath that this was an "error." *Id.* at 353:3–7.[4] However, Ms. Melapindi testifies that this was no error at all:

---

[4] Perjury is the "false testimony concerning a material matter with the willful intent to provide false

> Paidela served as a financial advisor to VistalTech. I observed Donipathi sharing VistalTech's financial statements with Paidela, and Paidela would review these financial statements **and provided guidance on VistalTech's operations** . . . [and] **advise on tax strategies such as releasing bulk payments to vendors in December to reduce VistalTech's apparent profit and minimize tax liability**.

Melapindi Decl., at ¶ 24 (emphasis added). The prejudice to MSR is self-evident with the missing materials that would have tied together all of the evidence to date.

Given the grotesque nature of Defendants' misconduct, termination sanctions and default judgment are appropriate. "The remedy should fit the wrong[.]" *Pable*, 2023 WL 2333414, at *33. The magistrate judge's order in *Pable* recommending dismissal of the plaintiff's complaint with prejudice is instructive. There, the plaintiff intentionally and in bad faith deleted Signal messages with a key witness and participants in the events underlying his claims against his former employer. Plaintiff intended to conceal communications showing the misconduct resulting in his termination. *Id.* at *6–7. Discovery revealed the plaintiff's deliberate attempts to delete these messages. Plaintiff's justifications for deletion shifted numerous times throughout the litigation, including his misrepresentations to the court as well as his inconsistent testimony during his deposition. *Id.* at *16–17. The magistrate judge concluded the most severe sanction was appropriate because (1) "[t]he sheer scope of the spoliation—combined with the commonsense assumption, built into Rule 37(e)(2), that parties who engage in intentional spoliation have something to hide—weighs in favor of dismissal"; (2) plaintiff "lied repeatedly in connection with [his] spoliation of ESI"; (3) the spoliation heavily impaired the employer's position in litigation; and (4) the volume of spoliated ESI made any alternative curative measure inadequate. *Id.* at *33–35.[5] The magistrate judge's

---

testimony, rather than as a result of confusion, mistake, or faulty memory." *Montano v. City of Chi.*, 535 F.3d 558, 564 (7th Cir. 2008). MSR reserves its right to seek contempt against Defendants for perjuring themselves throughout their depositions.

[5] *See also, e.g.*, *Global Material Tech., Inc. v. Dazheng Metal Fibre Co. Ltd.*, 2016 WL 4765689, at *9–10 (N.D. Ill., 2016) (entering default judgment under Rule 37(e)(2)(C) where defendants "disposed of

13

report and recommendation that recommended terminating sanctions was adopted by the district court and upheld on appeal by the Seventh Circuit. *Pable v. Chi. Transit Auth.*, 2024 WL 3688708, at \*12 (N.D. Ill., 2024); *Pable v. Chi. Transit Auth.*, 145 F.4th 712, 720 (7th Cir. 2025).

Defendants' misconduct is not just on all-fours with *Pable*—their conduct is demonstrably worse. After MSR discovered Defendants' fraudulent scheme, terminated them, issued a legal hold notice, initiated this litigation, and obtained orders from this Court enjoining them and requiring them to turn over evidence through expedited discovery and forensic imaging—they deleted as much key evidence as they could to cover their tracks and gain an unfair litigation advantage. In the face of the Court's unambiguous preliminary injunction order commanding that Defendants "***preserve all evidence, whether electronic or otherwise, related in any way to this action***" (Docket No. 84 [emphasis added]), their spoliation combined with their untenable coordinated usage of burner phones for the last two years have permeated this litigation to the point where terminating sanctions is the only curative measure. Accordingly, the Court should enter default judgment against Defendants and dismiss (for a third and final time) Paidela's and VistalTech's counterclaims with prejudice.

## II.    ALTERNATIVELY, THE COURT SHOULD MAKE FACTUAL FINDINGS, PRECLUDE ARGUMENTS, AND ORDER ADVERSE INFERENCES

While the Court should issue the most severe sanction, it may also make factual findings, preclude arguments, and order adverse inferences at trial in the alternative. *Hollis*, 603 F. Supp. 3d

---

[corporate] computers while the lawsuit was pending," "eras[ed] email[s]," and "lied" about extent of spoliation"); *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at \*9–12 (N.D. Cal., Apr. 24, 2020) (imposing terminating sanctions under Rules 37(b) and 37(e) where defendant maintained company-wide email-deletion policy, deleted specific email accounts, and wiped multiple employees' computers); *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 372–77 (D. Ore. 2017) (imposing terminating sanctions under Rule 37(e)(2) where defendants deleted documents and emails, deleted metadata, and "donated [a] computer to Goodwill").

14

625 ("This Court will provide factual findings to the jury along with an instruction as to how to apply that factual finding under Rule 37(e). The factual findings and instruction are attached to this order as an appendix. The Court has not decided when it will provide the factual findings and instruction to the jury. The three options are (1) during the introductory instructions, (2) at the close of Mr. Hollis' case-in-chief, or (3) at the close of evidence and following arguments, with all the other instructions."); *DR Distrib.*, 513 F. Supp. 3d 982 (ordering adverse inference and precluding defendants' from making certain arguments that spoliated ESI would have rebutted). To the extent the Court wishes to make factual findings, preclude arguments, and order adverse inferences, MSR submits an alternative Proposed Order with this Motion laying out the factual findings, preclusion of anticipated arguments, and adverse inferences that it requests under Rule 37(e)(2)(B). MSR reserves its right to seek additional curative remedies, including remedies this Court finds just and appropriate following the forthcoming evidentiary hearing on MSR's Rule 65(a)(2) motion.

## III. THE COURT SHOULD SANCTION DEFENDANTS FOR THE ATTORNEYS' FEES AND COSTS ASSOCIATED WITH MSR BRINGING THIS MOTION

Rule 37(a)(5) permits an award of attorneys' fees in prevailing on a motion for sanctions. *Schmalz*, 2018 WL 1704109, at \*7; *Cahill v. Dart*, 2016 WL 7034139, at \*5 (N.D. Ill. Dec. 2, 2016) (finding prevailing plaintiff entitled to reasonable attorneys' fees incurred in making the motion for sanctions). MSR respectfully requests the Court order reasonable attorneys' fees.

**CONCLUSION**

For the foregoing reasons, the Court should grant MSR's Motion and issue sanctions against Defendants. To the extent the Court desires an evidentiary hearing in deciding this Motion, MSR is prepared to call Ms. Melapindi as a witness at the forthcoming evidentiary on MSR's Rule 65(a)(2) motion for a preliminary injunction and consolidated trial on the merits.

//

15

Dated: May 25, 2026

Respectfully submitted,

By: */s/ Matthew S. Klepper*

Matthew S. Klepper
Jacob R. Clubb
DLA Piper LLP (US)
444 W. Lake Street, Suite 900
Chicago, IL 60606-0089
T (312) 368-4000
E matthew.klepper@us.dlapiper.com
E jacob.clubb@us.dlapiper.com

Troy A. Valdez (*pro hac vice*)
Tom Lin (*pro hac vice*)
Emily R. Margolis (*pro hac vice*)
Vani Parti (*pro hac vice*)
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco CA 94105-2933
T (415) 836-2500
E troy.valdez@us.dlapiper.com
E tom.lin@us.dlapiper.com
E emily.margolis@us.dlapiper.com
E vani.parti@us.dlapiper.com

*Counsel for Plaintiff/Counterdefendant*
*MSR Technology Group, LLC*

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on May 25, 2026, I electronically filed the foregoing document using the ECF System for the United States District Court for the Northern District of Illinois. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

/s/ *Matthew Klepper*
MATTHEW KLEPPER