IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MSR TECHNOLOGY GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> VISTALTECH, INC.; MASTAN REDDY PAIDELA; VAGDEVI SATKURI; MOULI PRASAD DONIPATHI; and KAPILESWAR REDDY JUTUR, and DOES 1-99 <br><br> Defendants. | Case No. 1:24-CV-03203 |

**PLAINTIFF MSR TECHNOLOGY GROUP, LLC'S MOTION FOR AN
ORDER TO SHOW CAUSE AS TO WHY THE COURT SHOULD NOT ISSUE
SANCTIONS FOR VIOLATION OF THE CONFIDENTIALITY ORDER**

Plaintiff MSR Technology Group, LLC ("MSR"), through undersigned counsel, respectfully submits this Motion for Sanctions under Federal Rule of Civil Procedure 37, including finding Defendant Mastan Reddy Paidela and his counsel of record, James D. Bass,[1] in contempt of court for their willful violation of the Court's Confidentiality Order.

**PRELIMINARY STATEMENT**

The soon-to-be ex-wife of Defendant Mouli Prasad Donipathi—Prathyusha Melapindi—has come forward and offered a declaration based on her firsthand observation of events from inside Defendants' conspiracy.[2] Not only has she confirmed what the documentary evidence

---

[1] Mr. James D. Bass is admitted to this Court *pro hac vice*. ECF 19, 23, 26. He is a member of the Missouri State Bar (SBN 32913).

[2] "Defendants" include VistalTech, Inc. ("VistalTech"), Mastan Reddy Paidela ("Paidela"), Mouli Prasad Donipathi ("Donipathi"), and Kapileswar Reddy Jutur ("Jutur"), and Vagdevi Satkuri ("Satkuri") (Paidela, Donipathi, Jutur, and Satkuri, the "Individual Defendants") (collectively with VistalTech, the "Defendants").

1

overwhelmingly reveals (that Paidela was actively involved with, aware of, and behind Defendants' scheme to steal MSR's business from the inside) but also that Defendants, with the aid of Paidela's counsel, have violated this Court's express orders. This conduct warrants sanctions.

This Court entered a Confidentiality Order that includes an "Attorneys' Eyes Only" provision. Pursuant to that provision, MSR has produced many documents in this case under the "AEO" designation. As revealed by Ms. Melapindi, Paidela and his counsel James D. Bass violated the Confidentiality Order's AEO provision: Mr. Bass shared AEO-designated documents with Paidela, who subsequently shared them with the other Individual Defendants. Paidela's later motion to de-designate these AEO materials, signed by Mr. Bass, demonstrates beyond any doubt that this disclosure was a blatant and willful violation of this Court's order. MSR respectfully requests that the Court issue sanctions commensurate with this deeply troubling misconduct, as requested below.

## RELEVANT FACTS

Paidela sold five information technology ("IT") staffing companies to MSR and remained as President to run those companies. MSR discovered in early 2024 that Paidela had conspired with Donipathi and Jutur, who were two of his top sales and recruiting managers, to secretly start a competing company called VistalTech to which they funneled MSR's customers and employees. MSR immediately terminated them and filed this lawsuit for injunctive relief and damages for violation of their restrictive covenants and the law. The Court entered a Temporary Restraining Order and granted MSR's Motion for Expedited Discovery. Docket Nos. 28, 29. As part of expedited discovery, the Court entered a Confidentiality Order. Docket No. 64. Given that Defendants participated in a conspiracy to form a competing company and engaged in the

2

corporate raiding of MSR's business, MSR was careful to ensure that the Confidentiality Order included an AEO[3] provision. Mr. Bass personally signed the Confidentiality Order on behalf of himself and Paidela. Docket No. 64. The Court entered the Confidentiality Order on June 4, 2024. *Id.*

MSR's initial discovery of Defendants' illegal scheme was brought to light by an anonymous tip. The initial tip led to phone calls and emails between MSR's principals and the anonymous tipster. At the outset, MSR did not know the tipster's identity because he used a pseudonym and a newly created anonymous email account. The anonymous tipster told MSR that his identity could not be made public because of retaliation he would face from Defendants if they were to learn about his reporting of their scheme. Eventually, the anonymous tipster revealed his true name to MSR, but at that time still begged MSR to maintain his anonymity in the litigation, expressing fear for himself and his family if Defendants knew his identity.[4]

At the deposition of one of MSR's principals, the Parties noted on the record that counsel for MSR, while Defendants were intentionally excluded from the deposition conference room, identified Mr. Puli as the anonymous tipster to Defendants' counsel subject to the express agreement that the Parties treat Mr. Puli's identity as the anonymous tipster as AEO under the Confidentiality Order. Declaration of Matthew Klepper ("Klepper Decl."), ¶ 2. With this

---

[3] The Confidentiality Order defines "HIGHLY CONFIDENTIAL – Attorneys' Eyes Only" information as "a subset of Confidential Information that may be designated pursuant to paragraph 4 upon a reasonable and good faith belief that the documents contain highly sensitive information the disclosure of which the designating party reasonably believes would result in substantial competitive, commercial, or financial harm to the designating party or its personnel, agents, clients, or customers, or that otherwise reveals information to which the opposing party is not entitled. It further states that "This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms." The Confidentiality Order further requires that "Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information." *See* Docket No. 64 (Confidentiality Order), at § 6(c).
[4] As has since been revealed publicly, the anonymous tipster is Vinod Reddy Puli, who is the brother-in-law of Jutur (he is married to Jutur's sister, Aparna Juturu).

understanding, MSR produced emails, text messages, and WhatsApp messages with Mr. Puli in discovery. These materials were all designated as AEO under the Confidentiality Order.[5]

In October 2025, Paidela issued a deposition subpoena directed at Mr. Puli and his wife (Jutur's sister). Ahead of Mr. Puli's deposition, the Parties met and conferred regarding the AEO designation of Mr. Puli's identity as the anonymous tipster. Klepper Decl., ¶ 3. Thereafter, Defendants filed a motion to de-designate Mr. Puli's identity as the anonymous tipster from AEO to "Confidential" pursuant to the Confidentiality Order. Docket Nos. 249–251.[6] In that motion to de-designate, Defendants bemoaned their inability to "fully participate in the defense and prosecution" of the case without access to the tipster's identity. *Id.* at 8. Counsel for all parties (as well as counsel for Mr. Puli) engaged in extensive meetings outside of the Court regarding the issue of the AEO designation of the anonymous tipster's identity and his emails with MSR representatives. Klepper Decl., ¶ 3. This included telephone calls and videoconferences between Mr. Bass, various counsel for the VistalTech Defendants, counsel for Mr. Puli, and counsel for MSR with respect to how to handle the upcoming depositions of Mr. Puli and his wife.[7] *Id.*

On December 11, 2025, Magistrate Judge Berry held a hearing on the de-designation motion and ordered Mr. Puli's identity to be de-designated to "Confidential," as of January 1, 2026.[8] Docket No. 254. The approximate three-week delay between the hearing and the effective date of the de-designation was to allow Mr. Puli to explain the situation to his wife, Jutur's sister.

---

[5] MSR has produced approximately 125 communications with Mr. Puli, all of which have been designated as AEO. Klepper Decl., ¶ 3.

[6] MSR did not oppose Defendants' motion to de-designate Mr. Puli's identity, but Mr. Puli's counsel opposed the de-designation. Klepper Decl., ¶ 4.

[7] The Parties' meet-and-confer efforts on this topic are also detailed in the Defendants' joint Motion to De-Designate Attorneys' Eyes Only Designation. Docket Nos. 250, 251, at pp. 2–4.

[8] In accordance with that Order, counsel for MSR promptly sent a letter to all Defendants identifying all of the documents containing MSR's communications with Mr. Puli that it was re-designating from "AEO" to "Confidential" under the Confidentiality Order. Klepper Decl., ¶ 4.

Given that Defendants filed a motion to de-designate Mr. Puli's identity as the tipster, there can be no doubt that Defendants and their counsel understood that this information was protected as AEO under the Confidentiality Order.

Ms. Melapindi's sworn testimony reveals that, due to Mr. Bass and Paidela's violation of the Confidentiality Order, Defendants had known Mr. Puli's identity for *six months* prior to the Court's December 11, 2025, hearing on the de-designation motion. *See* Ex. 1 (Declaration of Prathyusha Melapindi ["Melapindi Decl."]), ¶¶ 39–41. In **June 2025**, Ms. Melapindi was part of a telephone call (on speakerphone) with her, Donipathi, and Paidela. *Id*. On that call, Paidela told Donipathi and Ms. Melapindi that Mr. Puli—Jutur's brother-in-law—was the anonymous tipster. *Id.* Paidela further explained on the call that he learned this information from his attorney, Mr. Bass, who directed Paidela to keep this information confidential. *Id.* The Individual Defendants knew that Mr. Puli's identity at the time was designated as AEO. *Id.* In fact, when Donipathi asked his own then-attorney to confirm this information, the VistalTech Defendants' prior counsel Harry Arger refused to do so pursuant to the AEO designation under the Confidentiality Order. *Id.*

After that phone call, Donipathi and Ms. Melapindi received a package at their home in Chicago. *Id.* at ¶ 40. The package contained hard copies of documents reflecting email communications between MSR's principals and Mr. Puli, which had been produced by MSR in discovery with "AEO" designations. *Id.* Ms. Melapindi saw and personally reviewed the documents, including their "AEO" designations. *Id.* She was informed that the physical package had been provided by Mr. Bass to Paidela, who then sent the package to Donipathi. *Id.* Then, Donipathi shredded the documents. *Id.* at ¶ 41.

//

//

5

## LEGAL STANDARD

Federal Rule of Civil Procedure 37 gives the Court broad discretion to impose sanctions for abuse of discovery orders. *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012); *Tamari v. Bache & Co.*, 729 F.2d 469, 473 (7th Cir. 1984) ("The weight of authority . . . holds that the culpability of a party who fails to comply with a court order determines only which sanctions the court should impose and not whether any sanctions are appropriate at all."). Courts in this Circuit and District have held that violations of protective orders are among those discovery orders covered by Rule 37. *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005); *Ramirez v. T&H Lemon Inc.*, 845 F.3d 772, 776 (7th Cir. 2016); *NeuroGrafix v. Brainlab v. Brainlab, Inc.*, 2020 WL 6153269, at *2 (N.D. Ill. Oct. 11, 2020); *Instant Tech., LLC v. Defazio*, 2013 WL 5966893, at *3 (N.D. Ill. Nov. 8, 2013); *Whitehead v. Gateway Chevrolet, Oldsmobile*, 2004 WL 1459478 at *3 (N.D. Ill. June 29, 2004).[9] Violation of a protective order warrants sanctions. *See, e.g.*, *Newson v. Oakton Cmty. Coll.*, 2022 WL 17538299 (N.D. Ill. Feb. 10, 2022) (sanctioning a party under Rule 37 for recording a deposition in violation of a protective order prohibiting such recording); *Tama Plastic Industries v. Pritchett Twine & Net Wrap, LLC*, 2012 WL 1912578 (S.D. Ind. May 25, 2012) (awarding sanctions under Rule 37 where party improperly disclosed AEO materials to an expert witness in violation of a protective order). Even negligent violation of a protective order is sanctionable. *See e360 Insight*, 658 F.3d at 643 (finding that negligence alone "is a degree of fault sufficient for imposing sanctions" under Rule 37 and noting that willfulness, bad faith, or fault is only required for imposition of the most severe sanction of dismissal or default).

---

[9] In the alternative, the Court may impose sanctions for violations of protective orders under Federal Rule of Civil Procedure 16. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011).

One such sanction is a finding that a party and/or its counsel is in contempt of Court. *See* Fed. R. Civ. Proc. 37(b)(2)(A)(vii); *EEOC v. Dial Corp.*, 2001 U.S. Dist. LEXIS 24522 (N.D. Ill. Nov. 29, 2001) (finding the EEOC in contempt for violating a protective order by disclosing AEO materials to the public). To impose civil contempt,[10] the Court must find (1) that it had set forth an unambiguous order, (2) that the contemnor violated the order, (3) that the violation was significant, and (4) that the contemnor failed to take reasonable and diligent steps to comply with the order. *Prima Tek II, LLC v. Klerk's Plastic Indus.*, 525 F.3d 533 (2009). In fashioning a remedy for civil contempt, the Court may award sanctions including fines and/or damages incurred by the moving party. *See, e.g.*, *V.I.M. Recycles v. Magner*, 2004 WL 906313 (N.D. Ill. Apr. 26, 2004) (imposing sanctions of $100 per day for each day of violation of a protective order, plus interest and attorneys' fees).

Further, the Court **must** award the moving party in a successful Rule 37 motion its costs and fees caused by the failure to comply with the discovery order. Fed. R. Civ. Proc. 37(a)(2)(C) ("the Court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust").

//

//

---

[10] MSR does not seek a finding of criminal contempt in this Motion, despite the willfulness of the conduct. *See* 18 U.S.C. § 402; *In re Betts*, 927 F.2d 983, 986 (7th Cir. 1991) (describing the elements of criminal contempt as "(1) that the court entered a lawful order of reasonable specificity; (2) the order was violated; and (3) the violation was willful."); *Shakman v. Democratic Org. of Cook Cty.*, 533 F.2d 344, 348–49 (7th Cir. 1976) (explaining that the "real distinction between criminal and civil contempt is the nature of the relief asked for and the purposes of that relief"); *U.S. v. United Mine Workers*, 330 U.S. 258, 302–03 (1947) (criminal contempt sanctions are "punitive in their nature and are imposed for the purpose of vindicating the authority of the Court"); *U.S. v. Dowell*, 257 F.3d 694, 699 (2001) ("Contempt is 'criminal' if its purpose is to punish the contemner, vindicate the Court's authority, or deter future conduct.").

## ARGUMENT

### A.     Paidela and his Counsel Mr. Bass Should Be Held in Contempt.

There is no question here that the Confidentiality Order was unambiguous, or that Mr. Puli's identity and his communications with MSR's principals were AEO material under the Confidentiality Order. Indeed, Defendants acknowledged that Mr. Puli's identity and any related materials were protected as AEO when they filed their motion to de-designate, a motion that Mr. Bass signed. *See* Docket No. 250 (Motion to De-Designate AEO Designation), at 2 (requesting that the Court "enter an order de-designating the interim AEO designation regarding the identity of a tipster" and further describing the parties' AEO agreement, which was that the identity of the tipster had been shared "with [Defendants'] counsel on an attorneys' eyes only basis . . . they have agreed not to share that information with their clients and not to contact that person without either agreement from [MSR] or an order of the court").

There is also no question that Mr. Bass and Paidela knowingly violated the Court's unambiguous order. Melapindi Decl., ¶¶ 39–41. The only way that documents produced by MSR bearing "Attorneys' Eyes Only" designations could make their way to the personal home of Donipathi and his wife is by an attorney in this case violating the Confidentiality Order. Here, that Mr. Bass shared the documents with Paidela is confirmed by sworn testimony describing Paidela admitting to that exact thing (and, ironically, admonishing Defendants to keep what he was telling them confidential, because they were not supposed to know about it). *Id.* This violation was significant: not only did Mr. Bass share the AEO information with Paidela, who then verbally disclosed it to the other Defendants; the documents themselves were printed, mailed, viewed, and then shredded. *Id.* Paidela and Mr. Bass did not just fail to take reasonable and diligent steps to comply with the order—they brazenly violated it.

8

Mr. Bass and Paidela should be sanctioned for their contempt of court. Specifically, the Court should award MSR sanctions to recompense it for the fees and costs associated with the Parties' extensive meet-and-confer efforts surrounding the Defendants' de-designation motion, in which counsel for MSR participated in good faith. *See* Klepper Decl., at ¶¶ 3–4. Counsel discussed at length the plans for Mr. Puli and Ms. Juturu's depositions with Defendants' and the witnesses' counsel; reviewed and analyzed the de-designation motion; prepared for and appeared at the hearing on the motion; and carefully identified all de-designated documents following the hearing to identify them for Defendants. *Id.* While engaging in those negotiations, counsel for MSR was wholly unaware that Defendants ***already knew the tipster's identity***. Counsel for MSR would not have spent so much time, effort, and energy—translated into fees charged to the client—on negotiating the AEO de-designation request had counsel known that the anonymous tipster's AEO status had already been breached. This time was entirely wasted given that Defendants had illicitly obtained the AEO information six months prior.

### B.     MSR is Entitled to the Fees and Costs Associated with this Motion.

Separate from the sanctions in the amount of MSR's counsel's fees associated with the de-designation negotiation, the Court should award MSR its fees and costs for bringing this Motion as is required under Rule 37. Such fees and costs are mandated unless the offending party acted with substantial justification or other circumstances make the award unjust. Fed. R. Civ. Pro. 37(b)(2)(C)(iii). Even a negligent violation of the protective order would still warrant an award of fees and costs. *e360 Insight*, 658 F.3d at 643. Here, the violation was entirely willful. Indeed, it was done to achieve a tactical advantage in the case. Awarding MSR's fees in bringing this motion is therefore necessary and just.[11]

---

[11] If the Court awards MSR its fees and costs associated with (a) the work associated with the de-designation

### C. James D. Bass's Pro Hac Vice Should be Revoked.

"Admission *pro hac vice* is a privilege, not a right." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 954 (7th Cir. 2020). Federal courts have the inherent power to "control admission to its bar and discipline attorneys who appear before it." *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Revocation of *pro hac vice* status is an appropriate sanction for misconduct. *Id.* "All that is required before an attorney's admission pro hac vice is revoked is adequate notice of the conduct in question and a reasonable opportunity to be heard on the matter." *Id.*

Further, the conduct of an attorney appearing *pro hac vice* must conform to the local standards in the Rules of Professional Conduct. *Schmude v. Sheahan*, 312 F. Supp. 2d 1047, 1084 (N.D. Ill. 2004); *Anderson v. Hale*, 202 F.R.D. 548, 558 (N.D. Ill. 2001) ("It is axiomatic that [] counsel, as a *pro hac vice* admittee, must faithfully adhere to this Court's ethical rules."). The Northern District of Illinois's Local Rules 83.14 and 83.15 govern eligibility to appear *pro hac vice*. Local Rule 83.53.3(a)(7) requires that "a lawyer shall not engage in other illegal conduct or conduct in violation of these rules." Local Rule 83.58.4(a) states that: "(4) a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation" nor "(5) engage in conduct that is prejudicial to the administration of justice." Mr. Bass's disclosure of AEO materials to his client (and, indirectly, to the other Defendants and even to nonparties including Ms. Melapindi) constitutes dishonesty and conduct that is prejudicial to the administration of justice. The Court should revoke his *pro hac vice* status. This revocation is appropriate not only as a sanction for his misconduct, but also to ensure that counsel with apparent disregard for this Court's orders do not practice before it.

---

discussions and motion and/or (b) this Motion, including further briefing and any associated argument, then MSR requests that the Court provide it a reasonable period of time to submit a declaration attesting to the hours spent and hourly rates applicable to the work.

## CONCLUSION

For the foregoing reasons, MSR respectfully requests that the Court issue an order to show cause why it should not hold Paidela and his counsel Mr. Bass in contempt for their violation of the protective order; impose monetary sanctions for the damages that MSR incurred in legal fees related to the AEO status despite the violation; award MSR the costs and fees required to bring this motion under Rule 37; and revoke the *pro hac vice* status of Mr. Bass.

Dated: May 25, 2026

Respectfully submitted,

By: */s/ Matthew S. Klepper*

Matthew S. Klepper
Jacob R. Clubb
DLA Piper LLP (US)
444 W. Lake Street, Suite 900
Chicago, IL 60606-0089
T (312) 368-4000
E matthew.klepper@us.dlapiper.com
E jacob.clubb@us.dlapiper.com

Troy A. Valdez (pro hac vice)
Tom Lin (pro hac vice)
Emily R. Margolis (pro hac vice)
Vani Parti (pro hac vice)
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco CA 94105-2933
T (415) 836-2500
E troy.valdez@us.dlapiper.com
E tom.lin@us.dlapiper.com
E emily.margolis@us.dlapiper.com
E vani.parti@us.dlapiper.com

*Counsel for Plaintiff/Counterdefendant*
*MSR Technology Group, LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that, on May 25, 2026, I electronically filed the foregoing document using the ECF System for the United States District Court for the Northern District of Illinois. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

/s/ *Matthew Klepper*
MATTHEW KLEPPER